```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
```

ANTHONY DANIELS,                       **MEMORANDUM AND ORDER**
                                               14-CV-3017 (KAM)(LB)
                         Plaintiff,

    -against-

MARISOL BONILLA and SEAN HUGHES,

                        Defendants.
```
------------------------------------
                                    X
```
**MATSUMOTO, United States District Judge:**

       On April 18, 2015, plaintiff Anthony Daniels ("plaintiff") commenced this *pro se* action pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging violations of his constitutional rights. On February 27, 2015, the remaining defendants, Police Officer Marisol Bonilla ("P.O. Bonilla") and Police Officer Sean Hughes ("P.O. Hughes") (collectively, the "defendants") moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, defendants' motion to dismiss is granted, and plaintiff's complaint is dismissed in its entirety.

**BACKGROUND**

**I. Procedural History**

       Plaintiff filed his original complaint in the United States District Court for the Southern District of New York on

April 18, 2014 against Taylor Westfall ("Ms. Westfall"), Ashley Reardon ("Ms. Reardon"), and Police Officers Bonilla and Hughes for violation of his constitutional rights pursuant to § 1983. (Complaint dated 04/18/14, ECF No. 2.) Plaintiff's action was subsequently transferred to the United States District Court for the Eastern District of New York on May 14, 2014. (Transfer Order dated 5/13/14, ECF No. 4.) On June 12, 2014, the court dismissed plaintiff's claims against robbery victims, Ms. Westfall and Ms. Reardon, on the grounds that they do not meet the definition of state actors pursuant to § 1983. (Mem. and Order dated 06/12/14, ECF No. 9.) The court permitted plaintiff's claims against officers Bonilla and Hughes to proceed. (*Id.* at 2-3.) On December 15, 2014, plaintiff moved for leave to file an amended complaint and attached his Amended Complaint thereto. (Mot. for Leave to File Am. Compl., ECF No. 24.) The court granted plaintiff's request on December 16, 2014 and construed plaintiff's attachment as his Amended Complaint. (Order dated 12/16/14; Am. Compl. dated 12/16/14 ("Am. Compl."), ECF No. 26.) Thereafter, defendants moved to dismiss plaintiff's Amended Complaint. (Mot. to Dismiss dated 1/12/15, ECF No. 30.)

**II. Factual Background**

The following facts are taken from plaintiff's Amended Complaint and the exhibits attached thereto.[1]

On April 6, 2012, Ashley Reardon reported a robbery and was interviewed at the 90th Precinct Detective Squad Office ("90th Precinct") in Brooklyn, NY. (Am. Compl. at 53[2] (Exh. E).) Ms. Reardon reported that as she entered the lobby of her building on April 6, 2012, she noted a male was following behind her. (*Id.*) Near the building's elevators, Ms. Reardon told the perpetrator that he did not belong in the building and should leave. (*Id.*) Once the elevator arrived, the perpetrator told Ms. Reardon to get into the elevator and then covered his face with a black mask. (*Id.*) Ms. Reardon reported that the perpetrator told her he was not going to hurt her, she should not scream and to give him her money. (*Id.*) Ms. Reardon stated that she had no money and "I just have my phone." (*Id.*) The perpetrator than patted Ms. Reardon down, removed her cellphone and fled the building once the elevator opened. (*Id.*)

At the police station, Ms. Reardon described the perpetrator as a six-foot tall, "light skin black or dark skin

---

[1] The exhibits attached to the Amended Complaint include, *inter alia*, Complaint Follow-Up Forms completed by law enforcement, selected pages of grand jury testimony transcripts, and a New York City Police Department photo array.
[2] Because the page numbering of the Amended Complaint is inconsistent, the court refers to the ECF page number stamped on each page in the top right hand corner of each page.

3

Hispanic" male wearing a camouflage colored hooded sweatshirt, black colored vest, and tan cargo pants.[3] (*Id.*) Ms. Reardon also noted that the perpetrator was holding a long, shiny cylindrical object that appeared to be made of chrome. (*Id.*) Ms. Reardon was unsure if the object was a firearm because it did not have the handle of a gun. (*Id.*)

On April 12, 2012 at approximately 9:45 p.m., Taylor Westfall was the victim of robbery and assault; she reported the incident to the 90th Precinct and was interviewed at 11:45 p.m. that evening. (Am. Compl. at 48 (Exh. D).) Ms. Westfall was walking home from the subway located at the intersection of Montrose and Bushwick Avenues to her apartment on Manhattan Avenue. (*Id.*) She did not notice anyone following behind her during her walk home. (*Id.*) Ms. Westfall opened the front door of her apartment building and entered the building's vestibule, and as she was opening the second door to the building's lobby, she noticed the front door behind her start to open. (*Id.*) Ms. Westfall grabbed the front door to open it, when a black male appeared from outside and grabbed for her pocketbook. (*Id.*) She screamed and fought with the male. (*Id.*) The male told her to "shoosh" but as she continued to scream, the male pulled out a firearm from his right pocket. (*Id.*) The male hit her on the

---

[3] Plaintiff states that Ms. Reardon told the 911 operator that she could not give a description of the perpetrator's face because it was "wrapped up." (Am. Compl. at 4.)

head with the weapon five to six times causing Ms. Westfall to fall to the ground. (*Id.*)  The perpetrator then kicked Ms. Westfall, at which point she let go of her purse and the perpetrator ran out of the building. (*Id.*)

Ms. Westfall then exited the building and began to chase the perpetrator, who was on a dark bicycle and fleeing south on Manhattan Avenue. (Am. Compl. at 48.)  Ms. Westfall was yelling and screaming while in pursuit and waved down a patrol car near Boerum and Lorimer Streets. (*Id.*)  After losing sight of the perpetrator, Police Officer Arias ("P.O. Arias") and Sergeant Taveras picked up Ms. Westfall, transmitted the description of the perpetrator over the radio, and continued canvassing the area with her. (*Id.* at 23 (Exh. B).)  Ms. Westfall described the perpetrator as a black male in his 40s, with a weight of 185 pounds, and a height of 5 feet 10 inches. (*Id.* at 48.)  Ms. Westfall stated that he was wearing a brown hooded sweater with a black sweater underneath. (*Id.*)

P.O. Hughes and Sergeant Zabo were patrolling when they heard the radio transmission that a male wearing a black jacket and a red-color hooded sweater, who was traveling on bicycle, was being pursued.[4]  (Am. Compl. at 18 (Exh. A).)  As P.O. Hughes and Sergeant Zabo headed in the direction of the

---

[4] At trial, P.O. Hughes stated that the perpetrator was on a purple bicycle wearing a brown hooded sweater and the hood was covering his head. (Am. Compl. at 19.)

pursuit, P.O. Hughes observed the perpetrator on a bicycle going northbound on Throop Avenue. (*Id.*)

At approximately 9:45 p.m. on April 12, 2012, plaintiff saw an individual wearing a dark jacket and red sweatshirt drop and abandon his bicycle.[5] (Am. Compl. at 14.) At the time, plaintiff was wearing a blue jacket and brown hooded sweatshirt. (*Id.*) Plaintiff approached the bicycle and while picking it up, a pipe fell from the bicycle. (*Id.*) Plaintiff did not believe the pipe was part of the bicycle, and he thus threw it away.[6] (*Id.*)

As plaintiff was riding the bicycle, P.O. Hughes and Sergeant Zabo attempted to pull him over. (Am. Compl. at 14.) Plaintiff started pedaling faster because he did not want to be arrested for taking the bicycle. (*Id.*) Plaintiff was unaware that a robbery had taken place in the area. (*Id.*) After following the perpetrator by car, P.O. Hughes exited the vehicle and pursued the perpetrator on foot. (*Id.* at 18.) During the police pursuit, plaintiff discarded his brown hooded sweater, blue jacket, and the bicycle. (*Id.* at 14.)

---

[5] Plaintiff alleges the incident in question occurred on April 18, 2012. (Am. Compl. at 14.) The court notes that the police reports detailing the robbery complaint and subsequent bicycle pursuit, which were attached as exhibits to plaintiff's Amended Complaint, indicate the date of the events described was April 12, 2012. (Am. Compl. at 18, 23, 28.) Consequently, the court construes plaintiff's complaint to describe the events which occurred on April 12, 2012.
[6] In a follow-up interview, P.O. Hughes stated that he saw the perpetrator throwing "what appeared to be a black/silver firearm over the fence of 398 Wallabout Street." (Am. Compl. at 18 (Exh. A).) At trial, P.O. Hughes stated that the item was "something metallic." (*Id.* at 18, 21.)

6

P.O. Hughes was unable to catch the perpetrator, but stated that he got "a good look" of the perpetrator and could identify him. (Am. Compl. at 18 (Exh. A).) P.O. Hughes described the perpetrator as a black male with pocked skin, between 40 and 45 years-old, who was wearing a black sweater with a rust-colored hooded sweater underneath. (*Id.*)

As the detective on duty, Detective Bonilla was assigned to investigate Ms. Westfall's robbery. (Am. Compl. at 44 (Exh. B).) During her investigation, Detective Bonilla received a call from Sergeant McCarthy of the 79th precinct. (*Id.* at 46.) Sergeant McCarthy told Detective Bonilla that he had seen a similar case in the past few years with an individual fitting the same description as the perpetrator in the Westfall robbery. (*Id.*) Sergeant McCarthy provided Bonilla with the New York State Identification ("NYSID") number of the plaintiff. (*Id.*) Detective Bonilla searched the NYSID in the police database, saw that the plaintiff fit the description in the alleged robberies, and thus placed a photograph of the plaintiff in the photo array. (*Id.*)

On April 18, 2012, P.O. Hughes participated in a photo array conducted by Detective Bonilla. (Am. Compl. at 40.) The photo array consisted of six different individuals, including the plaintiff who was in position number five. (*Id.*) Detective Bonilla read P.O. Hughes the viewing instructions and P.O.

Hughes indicated that photo number five was the perpetrator. (*Id.* at 40-41.)

Detectives visited plaintiff's home approximately two and half weeks after the robbery of Ms. Westfall. (Am. Compl. at 14.) Through Mr. William Haar, plaintiff's appointed attorney from the Brooklyn Legal Aid Society, plaintiff made arrangements to meet with the detectives at the 90th Precinct. (*Id.*) Once plaintiff arrived, he was restrained and escorted to a police van. (*Id.*) The detectives ignored plaintiff's questions about why he was being handcuffed and if he was being arrested. (*Id.*)

Mr. Haar informed plaintiff that he was a suspect in a spree of robberies. (*Id.*) Mr. Haar also informed plaintiff that the police would be conducting a line-up and plaintiff could not leave unless he participated. (*Id.*) Plaintiff participated in the line-up with six other individuals. (*Id.* at 15.) He was told that Ms. Reardon, Ms. Westfall and P.O. Hughes identified him as the perpetrator.[7] (*Id.*)

On May 19, 2014, plaintiff was convicted of two counts of robbery in the first degree, one count of attempted assault

---

[7] Mr. Haar also told the plaintiff that one victim was unsure because "it was more of a voice identification than a visual one." (Am. Compl. at 15.) During her grand jury testimony, Ms. Westfall indicated that she had previously testified that the perpetrator had worn a mask and she had identified the plaintiff at the lineup by "his height, his build, the force that he hit me with, his skin color and his eyes." (*Id.* at 49.) During the trial, Ms. Westfall testified that she was able to identify the plaintiff in court based on how he looked at the lineup. (*Id.* at 51.)

8

in the second degree and one count of attempted assault in the third degree. (Decl. of Ariel Lichterman ("Lichterman Decl."), Ex. D (Certificate of Disposition Indictment, State of New York v. Daniels, No. 38213, dated Sept. 3, 2014)).[8] As of July 24, 2014, plaintiff has been incarcerated at the Sing Sing Correctional Facility. (Am. Compl. at 12; *see also* New York State Dep't of Corrs. and Cmty Supervision, http://nysdoccslookup.doccs.ny.gov/ (Enter plaintiff's Department Identification Number (DIN), 14A3224)(last visited July 20, 2015)).

**III. Plaintiff's Claims**

Plaintiff argues that his entire criminal case rests upon his false identification, the officers' manipulation of the facts, and perjury, which constitute violations of his constitutional rights. (Am. Compl. at 3.)

Plaintiff contends that the police did not have probable cause to initially detain him for the robberies of Ms. Reardon and Ms. Westfall. (Am. Compl. at 1.) Plaintiff argues that he did not sufficiently fit the description of the perpetrator and highlighted inconsistencies among the witnesses' testimonies. Plaintiff further alleges that his detention at

---

[8] The court may take judicial notice of the Certificate of Disposition for the limited purpose of recognizing that plaintiff's prosecution resulted in conviction. *See, e.g.*, *Marcus v. Bush*, 11-cv-4049, 2013 WL 2154786, at *3 (E.D.N.Y. May 17, 2013) ("[T]he Court may consider matters of which it may take judicial notice, such as a certificate of disposition").

the 90th Precinct was illegal, because he was placed under mechanical restraints without being told what was occurring or if he was arrested. (Am. Compl. at 14.)

Plaintiff also alleges wrongdoing on the part of the Assistant District Attorney and various law enforcement officials. Plaintiff contends that the Assistant District Attorney permitted the introduction of false police reports, used fabricated documents, and conspired with Detective Bonilla and P.O. Hughes to provide false testimony at trial. (Am. Compl. at 5.) Plaintiff alleges that Detective Bonilla knowingly committed perjury as to how plaintiff was identified because it is "unworthy of belief" that plaintiff was identified based on the vague description provided by P.O. Hughes. (Am. Compl. at 6.) Plaintiff stresses that he does not have pocked skin as stated in P.O. Hughes' police report. (*Id*. at 2, 7.) Plaintiff also asserts that results of the photo array were illegitimate because the description provided by P.O. Hughes was too vague and plaintiff's photograph was brighter than the other photographs in the array. (Am. Compl. at 2, 7, 26.)

Plaintiff also highlights additional inconsistencies in the testimonies of Detective Bonilla and P.O. Hughes. Plaintiff notes that Detective Bonilla stated that the suspects were only standing upright during the line-up observed by Ms. Westfall (and were otherwise seated in the line-ups by other

witnesses), which contradicts P.O. Hughes' statement that the suspects were also standing up when he was asked to identify the perpetrator in the line-up. (*Id.* at 28, 36, 38.) Detective Bonilla conducted the line-up, and hence "there is no way she could not have known this." (*Id.* at 5.) Plaintiff also argues that Detective Bonilla's testimony at the *Wade* hearing that she was not aware masks were involved was not credible because several witnesses mentioned the masks in their interviews. (*Id.* at 4.) Furthermore, plaintiff alleges that P.O. Hughes lied about why he chased the plaintiff since plaintiff did not fit the description of the suspect that was transmitted over the radio. (*Id.* at 20.)

Plaintiff seeks ten million dollars in compensatory and punitive damages against each defendant and reimbursement of any and all fees pertaining to the litigation. (Am. Compl. at 15.)

**DISCUSSION**

I. **Standard of Review**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Allen v. Norman*, 548 Fed. App'x 25, 26 (2d Cir. 2013). A complaint, however, "must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations
omitted); Fed. R. Civ. P. 12(b)(6).

"[O]n a motion to dismiss, a court may only consider
[1] the pleading itself, [2] documents that are referenced in
the complaint, [3] documents that the plaintiff relied on in
bringing suit and that are either in the plaintiff's possession
or that the plaintiff knew of when bringing suit, and [4]
matters of which judicial notice may be taken." *Arrocha v. City
Univ. of New York*, 878 F. Supp. 2d. 364, 368 (E.D.N.Y.
2012) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153
(2d Cir. 2002) and *Int'l Audiotext Network, Inc. v. Am. Tel.&
Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

In the case of *pro se* plaintiffs, "submissions of a
*pro se* litigant must be construed liberally and interpreted to
raise the strongest arguments that they suggest." *Triestman v.
Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006).

**II. Section 1983**

Plaintiff alleges claims of false arrest and malicious
prosecution pursuant to § 1983.[9]  (Am. Compl. at 1.)  To state a

---

[9] Plaintiff also alleges a false imprisonment claim pursuant to § 1983. (Am. Compl. at 1.)  The court does not address this claim separately, because pursuant to New York law "the tort of false arrest is synonymous with that of false imprisonment." *Jean v. City of New York*, 512 Fed. App'x 30, 31 (2d Cir. 2013) (quoting *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)(holding that

claim under § 1983, a plaintiff must allege that 1) a person acting under the color of state law, at least in part, participated in the challenged conduct and 2) the conduct deprived the plaintiff of a constitutional right. *Miller v. Rice*, 14-CV-2928, 2014 WL 3734544, at *3 (E.D.N.Y. July 28, 2014)(citations omitted). Congress enacted § 1983 to give a "remedy to parties deprived of constitutional rights, privileges, and immunities by an official's abuse of his position." *Poventud v. City of New York*, 750 F.3d 121, 128 (2d Cir. 2014).

**A. Favorable Termination**

Section 1983 claims for false arrest[10] and malicious prosecution[11] require the plaintiff to allege the favorable termination of his conviction or confinement. *Heck v. Humphrey*, 512 U.S. 477, 486 (1994); *see also Corley v. Vance*, 15 CIV. 1800, 2015 WL 4164377, at *3 (S.D.N.Y. June 22, 2015)(internal citations omitted)(holding that false arrest and malicious

---

"false arrest is a species of false imprisonment" and requires the plaintiff to prove the same elements).
[10] A false arrest claim requires a plaintiff to plead 1) the defendant intended to confine the plaintiff; 2) the plaintiff was conscious of the confinement; 3) the plaintiff did not consent to the confinement; and 4) the confinement was not otherwise privileged. *Shain v. Ellison*, 273 F.3d 56, 67 (2d Cir. 2001). When an arrest is based upon probable cause, it is privileged. *See, e.g.*, *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).
[11] A malicious prosecution claim requires a plaintiff to plead 1) commencement or continuance of a criminal proceeding; 2) lack of probable cause; 3) existence of malice and 4) termination in plaintiff's favor. *Pacicca v. Stead*, 456 Fed. App'x 9, 12 (2d Cir. 2011)(summary order)(citing *Colon v. City of New York*, 455 N.E.2d 1248 (N.Y. 1983).

prosecution claims are barred if the criminal proceedings were not terminated in the plaintiff's favor); *Jefferson v. Chicara*, 13-CV-5649, 2015 WL 1439932, at *4 (E.D.N.Y. March 26, 2015) (finding that plaintiff failed to state a § 1983 false arrest claim because the underlying conviction had been invalidated).

The Supreme Court has made clear in *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Heck v. Humphrey*, 512 U.S. 477 (1994), that the § 1983 remedy is "effectively subordinated" to the "writ of *habeas corpus* when the remedies would overlap (and to some extent even when they do not)." *Poventud*, 750 F.3d at 128 (internal quotations and citations omitted). The Supreme Court has explained that a favorable termination may constitute a conviction or sentence that has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination or called into question by a federal court's issuance of a writ of *habeas corpus*. *Heck*, 512 U.S. at 486-87. An acquittal of all charges in a prosecution is also considered a favorable termination as a matter of law. *Evans v. City of New York*, 12-cv-5341, 2015 WL 1345374, at *20 (E.D.N.Y. Mar. 25, 2015)(citing *Weyant v. Okst*, 101 F.3d 845, 853-54 (2d Cir. 1996)). Generally, a claim for damages relating to a conviction that has not been invalidated is not cognizable under § 1983, because "a judgment in favor of

the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487.

Violations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963)[12], "have ranked within the traditional core of *habeas corpus* and outside the province of Section 1983." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011). *Brady* violations are remedied by a *vacatur* of the conviction and a new trial, which necessarily implies the invalidity of the challenged conviction. *Poventud*, 750 F.3d at 132-33; *Amaker v. Weiner*, 179 F.3d 48, 51-52 (2d Cir. 1999). Moreover, "allegations of extensive conspiratorial misconduct between defense counsel and the prosecution would render the plaintiff['s] convictions invalid if proven, and thus are barred by *Heck*." *Peay v Ajell*, 470 F.3d 65, 68 (2d Cir. 2006). Similarly, alleged prosecutorial misconduct is barred because such conduct necessarily implies invalidity of the conviction. *Whaley v. Lopez*, 12-CV-2889, 2012 WL 3137900, at *7 (E.D.N.Y. July 30, 2012)(citing *Kevilly v. New York*, 410 Fed. App'x 371, 374 (2d Cir. 2010)).

However, § 1983 remains a possible remedy when there is no other federal avenue to bring a claim. *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 375 (E.D.N.Y. 2013). If

---

[12] A *Brady* violation requires 1) the evidence at issue must be favorable to the accused either because it is exculpatory, or because it is impeaching 2) that evidence must have been willfully or inadvertently suppressed by the State and 3) prejudice, shown by materiality, must have ensued. *Poventud*, 750 F.3d at 133 (citing *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004)).

the plaintiff did not have the means to make a petition for *habeas corpus*, a § 1983 claim may proceed. *See, e.g.*, *Glasgow v. Beary,* 2 F. Supp. 3d 419, 426 (E.D.N.Y. 2014)(holding that plaintiff did not have sufficient access to habeas relief because he was in state custody for less than twenty four hours). *Heck* also does not bar § 1983 claims that challenge the conditions of a prisoner's confinement when the prisoner is unable to make this challenge through a petition for *habeas corpus*. *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999)(citing *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999)).

**B. The Amended Complaint Fails to Allege Favorable Termination**

Here, judgment in favor of plaintiff's false arrest and malicious prosecution claims based on his allegations of false arrest, actual innocence, prosecutorial misconduct, evidence tampering and perjury would necessarily require invalidating plaintiff's conviction. *See*, *e.g., Bowers v. Kelly*, 13-cv-6265, 2015 WL 2061582, at *3 (S.D.N.Y. May 4, 2015)(Because "[p]laintiff's malicious prosecution, *Brady*, fair trial and conspiracy claims all directly attack the propriety of the criminal action against [p]laintiff," "they are inconsistent with his state court criminal conviction" and "must be dismissed."); *Duren v. County of Nassau*, 12-CV-0298, 2013 WL 5406443, at *2 (E.D.N.Y. Sept. 23, 2013)(finding that plaintiff's § 1983 claim for false arrest alleging detectives

16

falsified evidence were barred by *Heck,* because they implicitly challenge the validity of plaintiff's conviction).

Plaintiff fails to allege the favorable termination of his conviction to overcome the *Heck* bar. Specifically, plaintiff does not allege that his convictions have been reversed, expunged, acquitted, or called into question by the issuance of a writ of *habeas corpus*.[13] Consequently, plaintiff's claims must be dismissed. *See Amaker*, 179 F.3d at 48 (holding that the complainant's allegations that police, prosecutors, and various court personnel conspired to secure plaintiff's conviction by manufacturing evidence was barred because it questioned the validity of his conviction); *Geer v. Brown*, 14-CV-6172, 2015 WL 4042166, at *4 (E.D.N.Y. July 1, 2015)(holding that a ruling on falsified evidence would necessarily imply the invalidity of his conviction and hence a § 1983 claim was barred); *Pooler v. Hempstead Police Dept.*, 897 F. Supp. 2d 12, 24 (E.D.N.Y. 2012)(holding plaintiff's criminal convictions barred his malicious prosecution and false arrest claims under *Heck*). Plaintiff also does not allege that his claims fall under any established exceptions nor that he does not have sufficient access to other federal avenues, such as a petition for *habeas corpus*.

---

[13] Even if the court were to construe the Amended Complaint as a habeas corpus action under 22 U.S.C. § 2254, it would be dismissed because plaintiff provides no evidence that he has exhausted state administrative remedies. *See Channer v. Mitchell*, 43 F.3d 786, 787.

## CONCLUSION

For the foregoing reasons, the court grants defendants' motion to dismiss plaintiff's Amended Complaint in its entirety. The court denies plaintiff's request to amend his complaint for a second time (*see* Pl. Opp., dated Jan. 22, 2015, ECF No. 33), because amendment would be futile in this case. *See, e.g.*, *Van Buskirk v. New York Times Co.*, 325 F.3d 87, 90 (2d Cir. 2003)(upholding district court's denial of request for leave to amend when amendment would be futile).

Nonetheless, plaintiff's claims are dismissed without prejudice for the suit to be reinstituted should plaintiff's conviction be terminated favorably. *See Amaker*, 179 F.3d at 52 ("Disposition on *Heck* grounds, however, warrants only dismissal *without* prejudice, because the suit may be reinstituted should plaintiff's conviction" result in favorable termination.) The Clerk of the Court is respectfully directed to mail a copy of this Memorandum and Order to plaintiff, note entry on the docket, and to close this case.

Dated:    August 17, 2015
           Brooklyn, New York

                                            _____/s/_____
                                            Kiyo A. Matsumoto
                                            United States District Judge